**VICTORIA L. FRANCIS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 1478**
**Billings, MT 59103**
**2929 Third  Ave. North, Suite 400**
**Billings, MT 59101**
**Phone: (406) 247-4633**
**Fax: (406) 657-6989**
**E-mail: victoria.francis@usdoj.gov**

**TIMOTHY J. CAVAN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 1478**
**Billings, MT 59103**
**2929 Third  Ave. North, Suite 400**
**Billings, MT 59101**
**Phone: (406) 247- 4674**
**Fax: (406) 657- 6989**
**E-mail: Tim.Cavan@usdoj.gov**

**ATTORNEYS FOR DEFENDANTS**
**United States of America**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BILLINGS DIVISION**

| | |
|---|---|
| **CHRISTOPHER KORTLANDER, HISTORICAL RARITIES, INC. and THE CUSTER BATTLEFIELD MUSEUM, INC.,**<br><br>        **Plaintiffs,**<br><br>   **vs.**<br><br>**BRIAN CORNELL, Bureau of Land Management Special Agent in His Individual Capacity, BART FITZGERALD, Bureau of Land Management Special Agent, in His Individual Capacity, DOUG GOESSMAN, U.S. Fish and Wildlife Service Special Agent, in His Individual Capacity, and 21 or More Unknown Federal Agents,**<br>        **Defendants.** | **CV 10-155-BLG-RFC-CSO**<br><br><br>**<u>DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS</u>** |

Plaintiffs have filed a complaint against certain named federal employees alleging 17 causes of action for violations of the First, Second, Third, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.  This complaint should be dismissed due to statute of limitations and qualified immunity.

## ARGUMENT

## A.  Plaintiffs' Claims Arising From the 2005 Search Are Barred by Statute of Limitations.

The federal circuit courts have uniformly concluded that the protected interests, potential relief, and defenses available in *Bivens* actions are similar to actions under §1983; therefore, the relevant state general personal injury statute of limitations applies in *Bivens* cases as well as claims under 42 U.S.C. §1983.  *Van Strum v. Lawn*, 940 F.2d 406, 409-410 (9th Cir. 1991).

Plaintiffs' allegations regarding the 2005 search accrued on the date of the search, March 31, 2005.  Federal law determines when a *Bivens* claim accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  When a plaintiff knows, or has reason to know of the injury which is the basis of the action, the *Bivens* claim accrues.  *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 761-762 (9th Cir. 1991); *U.S. v. Kubrick*, 444 U.S. 111, 122 (1979). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Johnson v.*

*Johnson County Comm'n Bd.*, 925 F.2d 1299, 1300 (10th Cir. 1991).

A plaintiff does not have to possess actual knowledge of every element of the claim for it to accrue. It accrues as soon as a plaintiff possesses knowledge of facts sufficient to put him on inquiry notice. *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir. 1984). Thus, in the case of an allegedly wrongful arrest, the statue of limitations would normally commence to run from the date of the arrest. *Wallace*, 549 U.S. at 388.

In *Owens v. Okure*, 488 U.S. 235, 236 (1989), the Supreme Court held that the residual statute of limitations for state torts will be applied to §1983 actions. Montana law provides a three-year statute of limitations for general and personal injury. §27-2-204. M.C.A. Thus, a three-year statute of limitations applies to *Bivens* actions arising in Montana. *Weible v. Sheriff of Lake County*, CV 10-45-M-DWM (Dec. 15, 2010, dismissal order Doc. #47 at 5-9).

In this case Plaintiffs' claims related to the March 31, 2005 search and seizure are barred by the statute of limitations. Plaintiffs did not file the complaint until December 6, 2010. Plaintiffs were aware of

their injury and the cause of their injury on the day of the search.

Therefore, allegations arising from the March 31, 2005 search are

barred by the statute of limitations.  (Compl. ¶12-64).

## B.  All Claims Barred by Qualified Immunity.

All of Plaintiffs' causes of action are barred by qualified immunity

(QI).  QI protects government officials and employees in a *Bivens* case

"from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  Its purpose is to shield officers from "undue

interference with their duties and from potentially disabling threats of

liability."  *Id.* at 806.

QI provides "ample room for mistaken judgments."  *Malley v.*

*Briggs*, 475 U.S. 335, 343 (1986).  Thus, officials are immune from

claims for damages, "as long as their actions could reasonably have

been thought consistent with the rights they are alleged to have

violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

QI is "immunity from suit rather than a mere defense to liability;

and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* Thus, courts must carefully evaluate a plaintiff's allegations for legal sufficiency before allowing discovery. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In evaluating QI, courts apply a two-part test. One aspect of the test is determining whether plaintiffs have even asserted a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The other part of the test is for the court to "examine whether defendants' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Galvin*, 374 F.3d at 745; *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Even if the law or right alleged to have been violated is found to be clearly established, "if the officer's mistake as to what the law requires is reasonable,... the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. The

"rigid" order of evaluating the QI test set forth in *Saucier* has been modified in *Pearson,* 129 S. Ct. at 818 (2009).

Furthermore, in a *Bivens* claim liability flows to each officer only for his or her own acts, not the actions of others. *Pellegrino v. U.S.*, 73 F.3d 934, 936 (9th Cir. 1996) (dismissing excessive force claim against officer who participated in stop in which his partner shot suspect, holding that "*Bivens* liability is premised on proof of direct personal responsibility" and therefore officer present could not "be held vicariously liable for the conduct of another"); *Buford v. Runyon*, 160 F.3d 1199, 1203 n.7 (8th Cir. 1998) (*Bivens* "defendants  liable for their personal acts only"); *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001).

There are no allegations related to the 2008 search against Doug Goessman and Bart Fitzgerald, nor could there be, as Fitzgerald had previously transferred to Arizona and Goessman was on assignment overseas.  The only allegation relating to Fitzgerald at all in the complaint is an allegation relating to the 2005 search pertaining to an interview with the media.  (¶34).  As discussed below such a claim does

not give rise to a Constitutional tort and is also barred by the statute of limitations.

The only allegation of wrongdoing as to Goessman is that he participated with the 2005 search to look for evidence of other crimes. (Compl. ¶35-36).  However, USFWS and BLM are part of the same agency, the Department of Interior.  "Typically, only one or a few officers plan and lead a search, but more--perhaps many more--help execute it."  *Ramirez v. Butte Silver-Bow County*, 283 F.3d 985, 990 (9th Cir. 2002).  Inadvertence is no longer a requirement to the plain-view doctrine in any event.  *Horton v. California*, 496 U.S. 128, 141-142 (1990).  Moreover, such 2005 allegations are barred by the statute of limitations.

Finally, Plaintiffs are not entitled to delay a ruling on this motion to dismiss regarding John Does.  Line officers assisting in the search are entitled to rely on the search leaders that they are executing a valid warrant.  *Ramirez*, 283 F.3d at 990.

## 1.  No First Amendment Violations (1st COA).

Plaintiffs allege a First Amendment violation in their first cause

of action (COA) asserting that Kortlander has been denied his right to free speech.  It appears that in paragraph 63, Plaintiffs allege that by initiating charges (*sic*) (since no charges were filed Plaintiffs must be referencing initiating an investigation), their freedom of speech was violated because they were no longer able to interact freely with friends, and business associates due to the threat of being charged criminally with tampering with witnesses; and therefore, Plaintiffs suffered economic damages.

These allegations do not support a clearly established First Amendment claim.  To demonstrate a First Amendment violation, "a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).  In the present case there is no allegation that any action was taken against Plaintiffs because of political speech.

To some extent what Plaintiffs are really seeking to claim is that they suffered an injury to reputation or business.  The Plaintiffs allege

that people were not doing business with them due to the investigation and media coverage. (Compl. ¶¶34,60-62).  However, such a claim is not actionable as a constitutional tort.  *Siegert v. Gilley*, 500 U.S. 226, 233-234 (1991); *Paul v. Davis*, 424 U.S. 693, 708-709 (1976)).  Loss of potential employment and other out-of-pocket loss is not a deprivation of a constitutionally protected interest.  *Siegert,* 500 U.S. at 233-234.

## 2.  No Second Amendment Violations (2nd COA).

Plaintiffs' second COA asserts a violation of the Second Amendment by violating Kortlander's right to keep and bear arms.  The only facts alleged in the complaint to support such a claim are set forth in paragraph 58 wherein Kortlander alleges that during the ongoing federal investigation in 2005, he lost the right to carry a firearm. Plaintiffs then cite to §45-8-321, M.C.A., which allows a sheriff to deny an applicant a permit to carry a concealed weapon. The only reference to a "criminal investigation" in the statute is that the sheriff need not give a written statement explaining the denial of such a permit if the applicant is a subject of an active criminal investigation.  §45-8-321(2), M.C.A.

Plaintiffs' allegations do not support a viable Second Amendment *Bivens* claim.  First, no federal agent has denied Kortlander the right to possess a firearm.   It is perhaps implied that the county sheriff may have denied Kortlander a concealed weapons permit, but the sheriff is not a federal employee and vicarious liability is not applicable to *Bivens* as noted above.  Moreover, such a denial prevents Kortlander from "concealing" his weapon, not possessing one.

Plaintiff has not shown that investigating a person gives rise to a clearly established Second Amendment violation, or that reasonable officers would have anticipated that a search would be such a violation. Few cases have addressed such an issue in the *Bivens* context, and none would indicate a Second Amendment violation in this case.  *Fields v. Harris*, 675 F.2d 219, 220 (8th Cir. 1982) (employee terminated for carrying a knife onto federal property, denied Second Amendment claim); *Bemis v. Kelley*, 671 F.Supp. 837, 842 (D.Mass. 1987); *U.S. v. Robinson*, 414 U.S. 218 (1973) (police have right to conduct search for weapons incident to a valid arrest without a warrant--not Second Amendment violation).

### 3. No Third Amendment Violations (3rd COA).

Plaintiffs allege in their third COA that their Third Amendment "right to be free from the intrusion of government agents into plaintiff's personal residence was violated."  The Third Amendment provides as follows:

> No soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

There are few cases addressing the Third Amendment.  In *Engblom v. Carey*, 677 F.2d 957 (2d Cir. 1982), the court addressed a Third Amendment claim when members of the National Guard were quartered in the staff housing of striking state prison officials.  The court found that the national guardsmen fell within the definition of soldiers and that there were questions of fact as to whether living quarters met the standard of a house.  *Id.* at 964.  However, there is no case finding that law enforcement officers executing a search warrant create a Third Amendment violation.  The Court in *Engblom* found no reported opinions that addressed the literal application of the Third Amendment except certain "farfetched, metaphorical applications

[which] have been urged and summarily rejected." *Id.* at 959 n.1 (citing *Sec. Investor Protection Corp. v. Exec. Sec. Corp.*, 433 F.Supp. 470, 472 n.2 (S.D.N.Y. 1977) and other cases).

**4.  No Sixth or Fifth Amendment Violations Related to Speedy Trial, *Miranda*, Right to Counsel or Facing Accusers (10th, 13th, 14th, and 15th COAs).**

In the complaint Plaintiffs allege that their Sixth Amendment right to a speedy trial was violated by delaying prosecution before declining indictment for nearly five years (13th COA); by violating the right of Plaintiffs to confront or face their accusers (14th COA); and violating the Fifth and Sixth Amendments by violating right to counsel and *Miranda* warnings and against self incrimination (10th & 15th COA).  The Sixth Amendment provides in part as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . .; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

The Sixth Amendment right to a speedy trial has no application prior to formal arrest or indictment.  *U.S. v. Moore*, 299 F.Supp.2d 623,

627-628 (S.D.W.Va. 2004).  The right only arises when a person

becomes an "accused," which is when prosecution is initiated by either

formal indictment or information or by actual restraints imposed by

arrest to answer criminal charges.  *U.S. v. Mills*, 641 F.2d 785, 787 (9th

Cir. 1981); *U.S. v. Lovasco*, 431 U.S. 783, 788-789 (1977).

Plaintiffs also have not pled any *Bivens* COA under the Sixth

Amendment, or even the Fifth Amendment, based on rights to counsel,

against self incrimination, and under  *Miranda*.  A *Miranda* rights

violation, which is denied, does not subject police officers to liability

under *Bivens* in any event.  *Marshall v. Columbia Lea Regl. Hosp.*, 345

F.3d 1157, 1165 n.6 (10th Cir. 2003).  Rules designed to safeguard a

constitutional right do not extend the scope of the constitutional right

itself, just as violations of judicially crafted prophylactic rules do not

violate the constitutional rights of any person.  *Mosley v. Yaletsko*, 275

F.Supp.2d 608, 614 (E.D.Pa. 2003); *Chavez v. Martinez*, 538 U.S. 760

(2003).  "Thus, where a suspect's statements are suppressed because he

was not properly given his *Miranda* warnings, he was not compelled to

be a witness against himself in a criminal proceeding, his Fifth

Amendment rights were not violated, and he has no COA under §1983.
*Mosley*, at 614; *Chavez*, 538 U.S. at 766-767.

There also can be no violation of the Fifth Amendment self-incrimination clause if statements were never admitted as testimony against the defendant in a criminal case.  Police questioning and investigation does not constitute a case.  A constitutional violation of this right only occurs at trial.  *Id.* at 767 (overruling Ninth Circuit finding of violation based on police questioning of suspect at hospital).

There are no clear allegations in the complaint as to when a *Bivens* claim accrued regarding Plaintiffs' right to counsel.  Plaintiffs fail to mention that counsel, Sol Neuhardt, was present at the time of the 2005 search and that Kortlander signed three typewritten consents to search that advised him of this right to counsel.  However, if for purposes of this motion to dismiss we assume no counsel was present, there still is no Sixth Amendment violation.  The right to counsel only attaches once an adverse proceeding has commenced against a person.  *Mills*, 641 F.2d at 788 (citing *Massiah v. U.S.*, 377 U.S. 201 (1969)).  "Initiation of  adverse proceedings occurs by way of formal charge,

preliminary hearing, indictment, information, or arraignment." *Id.*;

*Kirby v. Illinois*, 406 U.S. 682, 689 (1972).  In this case no adverse

proceedings occurred.

Moreover, a person's request to talk to his attorney for the

purpose of deciding whether to consent to search of his business does

not invoke a right under *Miranda* to speak to an attorney prior to

undergoing further police interrogation.  *U.S. v. LaGrone*, 43 F.3d 332,

335 (7th Cir. 1994); *U.S. v. Lemon*, 550 F.2d 467, 472 (9th Cir. 1977).  It

has been found that the right to counsel does not attach when a person

makes admissions over the telephone while officers are executing a

search warrant if the person has not been arrested, arraigned or

indicted on federal charges.  *U.S. v. Cates*, 663 F.2d 947, 948 (9th Cir.

1981).

Plaintiffs also do not have a Sixth Amendment claim based on an

alleged right to confront adversarial witnesses because the case was at

the investigation stage, and Plaintiffs had not been charged.  A

criminal defendant has no absolute right to confront police informants

whose information served as a basis of a warrant affidavit who do not

testify at a scheduled trial against him.  *Miller v. Sigler*, 353 F.2d 424, 427-428 (8th Cir. 1965).  The right to confrontation is a trial right and does not create a pretrial right to discovery.  *U.S. v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006); *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987).  The major underlying purpose of the Sixth Amendment right to confrontation is to give defendants charged with a crime an opportunity to cross-examine adversarial witnesses.  *Bruton v. U.S.* , 391 U.S. 123, 126-127 (1968).

### 5.  No Eighth Amendment Claim (16th COA).

Plaintiffs also have no Eighth Amendment claim from imposition of excessive costs or fines.  The 16th COA  asserts that Plaintiffs' Eighth Amendment rights have been violated by allegedly "imposing excessive costs upon Plaintiffs as a result of Defendants' unlawful and unreasonable intrusion into Plaintiffs' lives and business amounting to excessive fines imposed without a finding of criminal or civil liability." The Eighth Amendment provides as follows:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Eighth Amendment does not apply in this case for alleged

excessive fines.  The word "fine" as understood by the drafters means a payment to a sovereign as punishment for some offense.  *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal Inc.*, 492 U.S. 257, 264-265 (1989).  The excessive fines clause limits the government's power to extract payments as punishment for an offense.  *U.S. v. Bajakajian*, 524 U.S. 321, 328 (1998).  Plaintiffs were not ordered to pay the United States any money in this case.  Therefore, no violation of the excessive fines clause is triggered.

Nor does the cruel and unusual punishment clause apply.  This clause "was designed to protect those convicted of crime." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Beran v. U.S.* , 759 F.Supp. 886, 894 (D.C.D.C. 1991) (Although plaintiff was kept longer than he thought necessary after arrest, Court denied §1983 claim based on cruel and unusual punishment because plaintiff was not convicted.)*; Hornung v. Village of Park Forest*, 634 F.Supp. 540, 545 (N.D.Ill. 1986) (Court found no cognizable cruel and unusual punishment constitutional claim because plaintiff  found not guilty of any crime and the alleged conduct was not sufficiently egregious to "shock the conscience." ); *Rochin v.*

*California*, 342 U.S. 165, 172-174 (1952).  Nor does this case present a deliberate indifference to a serious medical condition.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### 6.  No Fourteenth Amendment Claim (11th COA).

Plaintiffs alleged in their 17th COA their Fourteenth Amendment rights were violated under equal protection of the laws.  It is not clear how Plaintiffs were treated different from any other class of citizens from the allegations in the complaint.  Even assuming such allegations existed, there still is no claim in this case.  The Fourteenth Amendment provides in pertinent part as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The guaranty of the equal protection clause of the Fourteenth Amendment is not applicable to the federal government and federal action, but is rather a restriction on state governments and state action.  *Simpson v. U.S.*, 342 F.2d 643 n.1 (7th Cir. 1965);  *Ducharme v. Merrill-Natl. Laboratories*, 574 F.2d 1307, 1310 (5th Cir. 1978).

The Fifth Amendment does prohibit discrimination "so unjustifiable as to be violative of due process." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). However, Plaintiffs have not raised any class-based distinctions to call any such violation into play.

Based on all of the above, Plaintiffs' 1st through 3rd, 10th, and 13th through 17th causes of action are all barred by QI.

## C. Defendants Are Entitled to QI for Fourth Amendment Claims (4th through 9th COA).

Plaintiffs allege violations of the Fourth Amendment asserting in their 4th COA unreasonable search of premises, 5th COA unreasonable seizure, 6th COA unreasonable search of person, 7th COA false allegation of Defendant's commission of a crime, 8th COA excessive or unreasonable force, and 9th COA no probable cause to seize computer or business records. The Fourth Amendment contains two separate clauses: a prohibition against unreasonable searches and seizures, and a requirement that warrants be supported by probable cause. QI bars the 4th through 9th COA.

### 1. Warrants are sufficiently particularized.

Plaintiff apparently alleges in the complaint that the description of the place to be searched was a Fourth Amendment violation.   A warrant sufficiently particularizes the place to be searched if the executing officers "can with reasonable effort ascertain and identify the place intended." *Steele v. U.S.* , 267 U.S. 498, 503 (1925).  A warrant must likewise be sufficiently particular as to the type of things to be seized.  *Andresen* v. Maryland, 427 U.S. 463, 480 n.10; *U.S. v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).  The complaint makes allegations regarding other tenants, or places on the property.  However, based on the allegations on their face, the problems relate to the 2005 search warrant, which are barred by the statute of limitations; and Plaintiffs do not have standing to raise third-party claims.

Moreover, it appears that Plaintiffs intermixed their closely held businesses and Kortlander's residence in one building, which is clearly described in the warrant which also attached a photograph of the search location.  The description is sufficiently particular given the circumstances.

## 2.  Manner of execution of the warrant reasonable.

S:\civil\2010v00210\MTD12_brief.wpd

Plaintiffs make many allegations regarding the manner of the execution of the search. Generally, the manner of execution must be reasonable.  However, much of what Plaintiffs allege is unreasonable does not support a constitutional claim.

Kortlander alleges he was unreasonably detained and that officers had walked through more rooms than they should have in the search.  However, the initial rounding up and temporary detention of employees is justified when executing a warrant.  *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  In *Summers*, the court discussed detention of individuals during a search.  It held that detention during a search, while a significant restraint on liberty, by itself was not a constitutional violation; it represented an "incremental" intrusion on personal liberty.  Further in assessing the justification for the detention of occupants, the court found that there is a legitimate law enforcement interest in preventing harm to police officers.  "[T]he intrusiveness of detaining an occupant of the premises being searched [is] outweighed by the law enforcement interests in: (1) preventing flight; (2) minimizing the risk of harm to the officers; and (3) conducting an

orderly search."  *U.S. v. Reinholz*, 245 F.3d 765, 778 (8th Cir. 2001);

*Summers*, 452 U.S. at 701-703.  Officers may make a protective walk-

through of the premises to verify safety and prevent destruction of

evidence.  *Muehler v. Mena*, 544 U.S. 93, 98-100 (2005) (In executing a

search warrant officers may take reasonable action to secure the

premises and to ensure their own safety and the efficacy of the search.);

*Los Angeles County v. Rettele*, 550 U.S. 609, 614-615 (2007) (Court held

that officers did not violate Fourth Amendment when two individuals,

of a race different than the person subject to the arrest warrant, were

ordered out of bed and stood unclothed until deputies secured the room

and ensured that other persons were not close by and did not present a

danger).

Plaintiff appears to allege an unreasonable search of his person.

However, in conducting a protective patdown an officer need not have a

specific reason to believe that the person in fact has weapons or

contraband on their person.  *Wyatt v. Slagle*, 240 F.Supp.2d 931, 939

(S.D.Iowa 2002); *U.S. v. Chadwick*, 433 U.S. 1, 14 (1977), *overruled*

*other grounds*, *California v. Acevedo*, 500 U.S. 565, 575-79 (1991).

Kortlander himself makes allegations in the complaint regarding his concealed weapons permit.

In addition a protective sweep of a vehicle is allowed during execution of a search warrant when the vehicle is parked in such a manner that a person inside could pose a danger to officers on the scene. *U.S. v. Jones*, 471 F.3d 868, 874-875 (8th Cir. 2006).

Plaintiffs also allege that some Defendants were "brandishing" their weapons. This appears to be the only claim that would allegedly support a claim of excessive force. This allegation is not clear. It does not describe what brandishing is, or which Defendants were in fact brandishing. The fact that law enforcement officers have weapons on their persons while conducting a search is not a Fourth Amendment violation, or at least reasonable officers would not know that it was a violation. Law enforcement officers on duty generally are armed. *Courson v. McMillian*, 939 F.2d 1479, 1493 (11th Cir. 1991). An officer does not act unreasonably in being prepared for possible violence. *Id*. at 1494. Even display of a weapon is generally not excessive force or even an unlawful assault by an officer in the line of duty. *Hinojosa v.*

*City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988).  An officer is entitled to take reasonable steps for personal safety, and the execution of a search warrant can be a situation where officers are entitled to be wary for their personal safety.

Plaintiffs also assert that media was present at the search. However, there is no allegation that media went into any building during the search.  The allegation in the complaint is that the Defendants contacted the Bighorn County Sheriff's office in advance of execution of the March 2005 search, and that the Sheriff assigned a deputy to accompany the Defendants during the search.  The complaint then alleges that the Sheriff contacted the media to advise them of the "raid."  (Compl. ¶32-33).

First, all aspects of the media being present were known in 2005, and the statute of limitations bars such claims.  However, the allegations in this case do not assert that media went into a home in the early morning hours, as was the situation in *Wilson v. Layne*, 526 U.S. 603 (1999).  When media arrive at the location of the search, during daylight hours, of a business structure open to the public, there

is no constitutional violation.  *See, e.g., Gibbons v. Lambert*, 358 F.Supp.2d 1048, 1071-1072 (D.Utah 2005) (media appearing at search and video-taping person in handcuffs walking to police car not a constitutional violation under the facts).  Citizens have a "diminished expectation of privacy" in that area surrounding their homes which constitutes the main route taken by members of the general public when visiting.  *U.S. v. Titemore*, 437 F.3d 251, 259 (2d Cir. 2006). Thus, there is even less expectation of privacy for media to arrive at an open commercial establishment visible from the expressway, during daylight hours when a search is taking place.

### 3.  Probable cause supports the warrants at issue.

Allegations asserting a lack of probable cause are also barred by QI in this case.  First, the affidavits are executed by Brian Cornell. Therefore, the other named persons and John Does are not liable for such a claim.  QI also protects Cornell because probable cause exists to support the affidavits.

"The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty.  Valid warrants will

issue to search the innocent,...." *Rettele*, 550 U.S. at 615.  Plaintiffs'

allege in the 7th COA that there are false allegations that Plaintiffs

committed a crime.  Rather, the affidavits speak to probable cause to

believe a crime had been committed.

Plaintiffs appear to allege that the affidavit contained either false

statements or misleading omissions.  In order to state a claim based on

such allegations, Plaintiffs must satisfy two fundamental requirements.

First, they must show that the law enforcement officers deliberately

lied to the court or acted with reckless disregard for the truth in

seeking the warrant.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978);

*Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995) (A civil rights claim

alleging that law enforcement officers misled a magistrate into issuing

a warrant must meet the same standards as a criminal defendant

making such a claim under *Franks*.).  The plaintiff must "point out

specifically with supporting reasons the portion of the warrant affidavit

that is claimed to be false" and must provide "a statement of supporting

reasons" for the challenge.  *Franks*, 438 U.S. at 171.

Only a substantial showing of deliberate falsehood or reckless

disregard for the truth will overcome the "presumption of validity with respect to the affidavit supporting" the warrant.  *Id.* at 171. "Negligence or innocent mistake are insufficient" to challenge a warrant.  *Id.* at 171.  This precludes challenges to warrants based merely upon the claim that officers failed to properly verify essential information or otherwise conducted an inadequate investigation prior to seeking a warrant.  *See, e.g., U.S. v. Miller*, 753 F.2d 1475 (9th Cir. 1985) (holding that failure to verify information provided by an informant does not invalidate a warrant); *U.S. v. Young Buffalo*, 591 F.2d 506 (9th Cir. 1979).

After satisfying the first step in the *Franks* inquiry, a plaintiff must then show that, but for the alleged inclusions or omissions he attacks, the warrant would not have issued.  *Hervey*, 65 F.3d at 789; *Franks*, 438 U.S. at 171-172.  To accomplish this, a plaintiff must prove that the alleged falsehoods and omissions were material to the court's probable cause determination in the sense that they were essential or indispensable to the finding.  Once the alleged omissions are considered and the alleged falsehoods are discounted, if there still exists a

substantial basis for the court's probable cause finding, the plaintiff cannot prevail on a *Franks* claim.   *Id.* (concluding that a challenge to a warrant will fail "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause"); *Hervey*, 65 F.3d at 789 ("[P]laintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause.").

The Supreme Court has adopted a highly flexible "totality of the circumstances" analysis to determine whether probable cause exists to support the issuance of a warrant.  *Illinois v. Gates*, 462 U.S. 213 (1983).  At the core of this analysis is the rejection of "rigid legal rules" in favor of a "commonsense" perspective that is "practical [and] nontechnical."  *Id.* at 230-236.  In undertaking this analysis, the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."  *Id.* at 238-239.  This highly deferential standard of review begins with a "presumption of validity."  *Franks,* 438 U.S. at 171, and requires that

"doubtful or marginal cases" be resolved in favor of the magistrate's finding of probable cause.  *Gates*, 462 U.S. at 236 & 237 n.10.

The defendants are immune from liability if they acted with "arguable" probable cause in seeking the warrant.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (finding that QI protects defendants if they "reasonably but mistakenly conclude[d] that probable cause [was] present"; *Kephart v. City of Bakersfield*, 2005 WL 1704463, at *23 (E.D.Cal. July 16, 2005) ("The qualified immunity question does not depend on whether probable cause actually existed."); *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997) (holding when "materiality may not have been clear at the time the officer decided what to include in, and what to exclude from, the affidavit ... the shield of qualified immunity should not be lost").

In this case the affidavit in support of the 2005 warrant has been attached to the complaint as Exhibit C.   An unidentified source reported to law enforcement that Kortlander was selling objects on the internet representing the objects had been found on land where the battle of the Little Big Horn took place.  The source stated Kortlander

falsely provided provenance to the buyer by providing "certificates"
which Kortlander would randomly fill in.  Agents did not just take the
word of the source, but rather corroborated by making an undercover
sale of items which had not been found on the battlefield affixed with a
data dot.  Then agents bought the item on the internet, and Kortlander
ultimately mailed the data-dot item and sent later sent a "certificate"
with an X purporting that the item was found on the battlefield.  This
is clear probable cause to search related to wire and mail fraud.

Allegations regarding the typo in the affidavit as to §1342 being
used on certain pages, instead of §1343 does not make the "common
sense" reading of the affidavit inaccurate.  The affidavit describes both
mail and wire fraud and accurately cites to wire fraud on Page 1 of the
application and on the page before the signature page to the affidavit
as 18 U.S.C. §1343.  In addition, there is probable cause as to mail
fraud.  Finally, the affidavit is further buttressed by the fact that
Kortlander continued to put forth on the internet an unauthorized
letter from a former BLM employee, after being sent clear notice from
BLM that the letter was not authorized or accurate.  Probable cause for

the search therefore clearly existed.

The second search warrant affidavit was inadvertently not affixed to the complaint.  The court has access to it, as it is filed under Cause No. MJ-08-43-BLG.  There is also clear probable cause to support the September 2008 search.  Plaintiffs are in possession of items which contain eagle feathers.  None of the Plaintiffs have a permit to possess eagle feathers, and Plaintiffs are not members of a federally recognized Tribe.  Plaintiffs do not deny that solicitations to sell inventory of the Custer Museum were at the very least in negotiations.  Lists of inventory included eagle feathers, which would result in a sale in violation of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. §703. Plaintiffs are wrong when they state eagles are not subject to the restrictions of the MBTA.  *U.S. v. Zak*, 486 F.Supp.2d 208, 212-213 (D.Mass. 2007) (Court took judicial notice that bald eagles protected under MBTA.); *U.S. v. Smith*, 29 F.3d 270, 272 (7th Cir. 1994).

Thus probable cause exists to support the 2008 search as well. Again, it is important to note that some innocent people will be searched.  Also the mere fact that charges were not filed is not always a

reflection as to whether a particular case can be proven beyond a reasonable doubt with a unanimous jury.  It can be a function of many other cases at issue in the office, and a discretionary decision as to whether to devote resources to a full trial.

## D.  Fifth Amendment Violations (11th and 12th COA).

It is not clear what the Fifth Amendment claim is against any particular defendant.  Plaintiffs make reference in their 11th COA to a deprivation of due process, and 12th COA to unlawful takings without just compensation as a Fifth Amendment violation.   However, for every perceived wrong, there is not a *Bivens* claim.  Such a "freestanding damages remedy for a claimed constitutional violation" is "not an automatic entitlement no matter what other means there may be to vindicate a protected interest."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  Implied actions are "disfavored," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-1949 (2007), and "in most instances" the Supreme Court has "found a *Bivens* remedy unjustified."  *Wilkie*, 551 U.S. at 550.  If there is an "alternative, existing process" there should be no *Bivens* remedy. *W. Radio Servs. Co. v. U.S.F.S.*, 578 F.3d 1116, 1122-1123 (9th Cir.

2009).

There is an alternative process for receiving compensation for federal government takings.  The Tucker Act, 28 U.S.C. §1492(a)(1), directs that takings claims for more than $10,000 be brought against the United States in the Court of Federal Claims.  *McGuire v. U.S.*, 550 F.3d 903, 910-911 (9th Cir. 2008).  The Little Tucker Act, 28 U.S.C. §1346(a)(2) allows for smaller takings claims to be brought against the United States in the district courts.  *Id.*  In the Tucker Act, "Congress has provided a means of paying compensation for any taking that might have occurred."  *Bay View, Inc. v. Ahtna, Inc.*, 105 F.3d 1281, 1285 (9th Cir. 1997).  Thus, as several courts have explained, there should be no judicially created *Bivens* action for a taking because the Tucker Act already provides a process for receiving compensation for a taking.  *Reunion, Inc. v. FAA*, 719 F.Supp.2d 700, 710 (S.D.Miss. 2010); *AAA Pharamacy, Inc. v. Palmetto GBA, LLC*, 2008 WL 5070958, at *5 (W.D.Okla. Nov. 24, 2008); *Anoushiravani v. Fishel*, 2004 WL 1630240, at *8 (D.Or. July 19, 2004).

Additional postdeprivation remedies are available under

Fed.R.Crim.P. 41(g).  *U.S. v. Omondi*, 2010 WL 882910 *2-3 (4th Cir.

2010) (appellants had notice that property was seized and could have

availed themselves of Rule 41(g) hearing for return of property,

therefore no Fifth Amendment violation.)  If the Plaintiffs desire a

return of the property, they can still avail themselves of Rule 41(g); and

in pleadings filed to unseal the search warrant affidavits, the Plaintiffs

indicated that they would be filing such a motion.

Further, the items seized that remain in possession of the United

States are contraband. Plaintiffs have been invited to show proof that

they own the property and that the eagle feather items are not

contraband.  If Plaintiff Kortlander is not the owner, he does not have

standing to make a constitutional claim related to the eagle feather

items.  Eagle feathers are contraband, and Plaintiffs are not entitled to

possession because one cannot have a property right in that which is not

subject to legal possession. *Helton v. Hunt*, 330 F.3d 242, 247-248 (4th

Cir. 2003).

## CONCLUSION

All 17 causes of action should be dismissed in this case based on

statute of limitations for the 2005 search and qualified immunity.

**DATED** this 21st day of March, 2011.

**MICHAEL W. COTTER**
**United States Attorney**


**/s/ Victoria L. Francis**
**Assistant U.S. Attorney**
**Attorney for Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of March, 2011, a copy of the foregoing document was served on the following persons by the following means:

    <u> 1  </u>  CM/ECF
    <u>    </u>  Hand Delivery
    <u> 2  </u>  U.S. Mail
    <u>    </u>  Overnight Delivery Service
    <u>    </u>  Fax
    <u>    </u>  E-Mail

1.  Clerk, U.S. District Court

2.  Opposing counsel:

Harold G. Stanton
Battlefield Museum
10- 5th Street East
Hardin, MT 59034
*Attorney for Plaintiff*
406/665-1510  - phone
406/665- 1510 - fax

**<u>/s/ Victoria L. Francis</u>**
**Assistant U.S. Attorney**
**Attorney for Defendant**s

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), the attached brief is

proportionately spaced, has a typeface of 14 points and contains 6,389

words, excluding the caption and certificates of service and compliance.

DATED this 21st day of March, 2011.


**/s/ Victoria L. Francis**
**Assistant U.S. Attorney**
**Attorney for Defendant**s