**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **CHRISTOPHER KORTLANDER, HISTORICAL RARITIES, INC. and THE CUSTER BATTLEFIELD MUSEUM, INC.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**BRIAN CORNELL, Bureau of Land Management Special Agent in His Individual Capacity, et al.,**<br><br>**Defendants.** | **CV 10-155-BLG-RFC**<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

**I.**   **INTRODUCTION**

Plaintiff Christopher Kortlander, and his businesses Historical Rarities, Inc. and Custer Battlefield Museum, Inc., have brought this *Bivens* action for deprivation of constitutional rights secured by the First, Second, Third, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment to the United States Constitution. The claims arise out of an investigation during the years 2003-09 by law

1

enforcement agents of the Department of the Interior related to the sale of fraudulent historical artifacts and the illegal possession of eagle parts. Although his property was seized during two searches, Kortlander was never arrested or charged and all items were eventually returned except those that the Government claims are contraband.

Defendants have moved pursuant to Rule 12(c) Fed.R.Civ.P. for judgment on the pleadings on the grounds that all claims are barred by qualified immunity and that claims arising out of a March 2005 search are barred by the statute of limitations. *Doc. 18.* After an exhaustive review of the Complaint, the proposed Amended Complaint, and the applicable law, the only conclusion is that the Complaint must be dismissed with prejudice. First, the vast majority of claims relate to the March 2005 search and are barred by the statute of limitations. Second, even if the 2005 claims were not time barred, they must be dismissed because they are implausible in that they do not allege the violation of a constitutional right. Further, many claims relating to the 2005 search are utterly frivolous because they are not recognized causes of action. Finally, all of the remaining claims relating to the 2008 search are implausible because they do not allege violations of constitutional rights and the proposed amendments do not cure

these deficiencies.

## II.   FACTUAL BACKGROUND[1]

Christopher Kortlander operates the Custer Battlefield Museum (the "Museum") in Garryowen, Montana, near the site of the Battle of the Little Bighorn in 1876. Garryowen is located at Exit 514 on Interstate 90 in southern Montana, about 62 miles from Billings. The Museum is located in a group of several buildings, including a gas station, a U.S. Post Office, a Subway sandwich shop, and Kortlander's offices and personal residence. Historical Rarities, Inc., is a Montana corporation controlled by Kortlander that deals in historical artifacts.

Defendant Brian Cornell is a Special Agent with the Department of the Interior's ("DOI") Bureau of Land Management ("BLM"). Cornell was responsible for initiating the Kortlander investigation. Defendant Bart Fitzgerald is also a Special Agent with the BLM. He is the Cornell's supervisor and was the BLM Agent in charge during the time period relevant to this lawsuit. Defendant Doug Goessman is a Special Agent with the DOI's Fish and Wildlife Service

---

[1]All facts cited in this Order are taken from the Complaint, search warrant documents attached thereto, as well search warrant documents the Court believes were inadvertently left off the Complaint, but which the allegations of the Complaint rely on. Consistent with the standard of review for Rule 12 Fed.R.Civ.P. motions, all facts are viewed in the light most favorable to Plaintiffs and all inferences are drawn in their favor.

("FWS"). The 21 additional John Doe Defendants are other federal and state law enforcement officers employed by the named Defendants to execute the March 2005 and September 2008 searches of Kortlander's property in Garryowen, MT.

In 2003 or before, Plaintiffs allege Defendants commenced an investigation without any evidence of criminal activity because they had a personal vendetta against him. According to Cornell's affidavit seeking a search warrant, the Bureau of Land Management Office of Law Enforcement and Security began receiving complaints that Kortlander was selling artifacts on Ebay that he claimed were recovered from the Little Big Horn battlefield. The artifacts allegedly sold were small items, such as ammunition casings, bullets, and buttons that were accompanied by a certificate signed by Kortlander proving the date and location on the battlefield where they were found. The artifacts were also accompanied by a letter written on BLM letterhead. Cornell alleges the letter refers to artifacts recovered on private land and was written in 1994 for another purpose. The Ebay auction listings referred to the letter as evidence of the items' authenticity.

On May 24, 2004, the Associate State Director for the BLM in Montana wrote Kortlander explaining that the BLM disavowed the findings of the author of the 1994 letter and the Kortlander should not use it to sell artifacts. Regardless,

Kortlander continued to sell artifacts with the letter.

The BLM then conducted an undercover operation. Cornell acquired several artifacts, including ammunition casings, uniform buttons, and uniform suspenders, seized during the execution of a search warrant in 1993. These items had no provenience–meaning source of origin in archaeological terms–according to the BLM. Cornell attached a microscopic "data dot" to each artifact. On December 14, 2004, an undercover BLM agent went to the Museum and met with Kortlander. Kortlander purchased four marked artifacts, three buttons and a suspender buckle, for $50.

On December 25, 2004, another undercover BLM agent placed a bid on a uniform button Kortlander was auctioning on his Ebay site. The button was represented to have been found on the Little Big Horn battlefield. Although the agent was outbid in the auction, the agent was later contacted by Kortlander via email and offered an identical button for $500. The agent asked if it was the same button earlier offered on Ebay and Kortlander wrote back inferring that it was. The agent bought the item and upon receipt determined that it was not the same button offered on Ebay. It was, however, accompanied by a certificate providing the location on the battlefield where it was allegedly found, as well as a copy of the

1994 BLM letter.

On February 14, 2005, the same undercover BLM agent bought another uniform button for $500 from Kortlander on Ebay. It looked like–and was in fact–one of those sold to Kortlander by the undercover agent. It was accompanied by a blank provenience certificate and a copy of the BLM letter Kortlander had been told to discontinue using. On March 17, 2005, Cornell called Kortlander in an undercover capacity at the Museum. Kortlander told Cornell that the button was recovered with a metal detector on private land in the 1990's. Kortlander also agreed to replace the blank certificate with a completed one and offered to sell Cornell another button.

Cornell used the results of the undercover operation to acquire a search warrant for the Custer Battlefield Museum and Store, and all attached offices, living quarters, and storage facilities. On March 31, 2005 approximately 24 federal agents, including some local law enforcement officers involved at the direction of the federal agents, executed the search warrant. The search was underway when Kortlander arrived in Garryowen. He was immediately detained and searched and he was restricted in his movement during the remainder of the search. The Complaint also alleges the agents were armed with automatic

weapons, which they used to threaten Museum employees and coerce Kortlander into signing consent-to-search forms. Again, no specific details of threats or coercion are provided. Similarly, the Complaint avers the agents "verbally and emotionally attacked and abused" Kortlander with threats of lengthy imprisonment if he did not consent to the search, but no specific details are alleged. The Complaint also avers that numerous items of personal property were seized, but again, no specific items are listed. Although the investigation of Kortlander continued, he was not arrested and was not charged with any crimes.

In September of 2008, Cornell acquired a second search warrant for the Museum. In the affidavit[2], Cornell avers that while executing the March 2005 search warrant to recover evidence of the artifact scheme, the agents observed numerous artifacts containing eagle and migratory bird parts and feathers. Cornell believed many of these artifacts had been donated to Kortlander's non-profit Custer Battlefield Museum.

_____

[2]Although the Complaint cites Cornell's Affidavit in section pertaining to 2008 search as Exhibit E, it appears the 2008 search warrant and application were inadvertently left off the Complaint as Exhibit E. *See doc.* 1, p. 24, ¶ 71. Exhibit E is actually another copy of the 2005 search warrant application, also attached as Exhibit C to the Complaint. Regardless, although the 2008 search warrant documents were not attached to the Complaint, it is part of the official Court record, and since this lawsuit directly challenges its validity, the Court may treat the document as part of the complaint for purposes of a Rule 12 Fed.R.Civ.P. motion. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

Cornell further averred that an investigation revealed the Museum was accepting donations of items containing eagle and migratory bird parts in exchange for tax benefits for the donor. Agents had interviewed some of the donors and reviewed documents relating to the donations. One individual was interviewed and revealed that he provided Kortlander with fraudulent appraisals for some of the donated items containing eagle feathers and that Kortlander had purchased eagle parts and feathers from him. A search of this individual's residence revealed a file containing evidence of an 1999 offer by Kortlander to sell his collection of artifacts, including the eagle feather artifacts. The investigation also revealed Kortlander offered to sell his collection again in 2004 and 2007 through his for-profit business Historical Rarities, Inc. Interviews with the purported buyers confirmed that items containing eagle parts were part of the contemplated sale.

Cornell also avers that in April of 2007, Kortlander contracted with Heritage Auction Galleries of Dallas, Texas to auction the entire town of Garryowen, including the collection of artifacts in the Museum. The sale was to be through Historical Rarities, Inc., Kortlander's for-profit business.

Cornell also averred that he recently visited the Museum and saw three eagle-feathered war bonnets on display in the Museum.

Finally, the search warrant affidavit notes that pursuant to 16 U.S.C. §§ 703, 707 it is a felony to sell or offer to sell any part of a migratory bird or products consisting of migratory bird parts.

The second warrant was executed in September of 2008, but the Complaint does not give a precise date. Cornell did not seek authority to search Kortlander's private residence and the search was limited to the Museum, where a Sioux Lance with golden eagle feathers, and three Cheyenne war bonnets with eagle feathers were seized from display cases. Although the Complaint alleges the warrant was not supported by probable cause, it makes no allegations of excessive force or other constitutional violations.

Although an indictment was drafted and the parties engaged in plea notifications, Kortlander was never charged with any crimes and the investigation officially closed in August of 2009. The Government, however, retains numerous items seized during the searches that it believes are contraband because they containing eagle and migratory bird parts. Kortlander has sought the return of these items pursuant to a Rule 41(g) Fed.R.Crim.P. motion that is pending before this Court in a related case.

# III.   ANALYSIS

A Rule 12(c) motion for judgment on the pleadings filed by a defendant is the functional equivalent of a Rule 12(b)(6) motion to dismiss for failure to state a claim, except that it is filed after the answer. S*ee Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1055 n.4. (9th Cir. 2011). Accordingly, the Court must "inquire whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Id.* A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)   Plausible does not mean probable, but there must be more than a "sheer possibility" of unlawful action on the part of defendant. *Id.* In considering the motion, the Court must take all of the factual allegations in the complaint as true, it is not bound to accept as true legal conclusions couched as factual allegations. *Bell Atlantic Co. v. Twombly,* 550 U.S. 544, 555 (2007).

In *Bivens v. Six Unknown Federal Narcotics Agents,* the Supreme Court recognized a cause of action for victims of Fourth Amendment violations.  403 U.S. 388 (1971).  In the intervening forty years, the Court has created two more

10

non-statutory, *Bivens* actions for constitutional violations: (1) for unlawful

discrimination under the equal protection components of the Due Process Clause of

the Fifth Amendment, *Davis v. Passman,* 442 U.S. 228, 236 (1979); and (2) for

Eighth Amendment violations caused by prison officials, *Carlson v. Green*, 446

U.S. 14, (1980). The Supreme Court has rejected all other attempts to expand

*Bivens. See Wilkie v. Robbins,* 551 U.S. 537, 549-50 (2007); *see also Arar v.*

*Ashcroft,* 585 F.3d 559, 571-72 (2d Cir.), *cert. denied* 130 S.Ct. 3409

(2010)(listing instances where the Supreme Court has refused to extend *Bivens* and

declining to create Fifth Amendment substantive due process *Bivens* action for

persons subject to extraordinary rendition); *see also* Daniel L. Pines, Rendition

Operations: Does U.S. Law Impose Any Restrictions, 42 Loy.U.Chi.L.J., 576-77

(Spring 2011) (the Supreme Court has only recognized *Bivens* actions for

violations of the Fourth Amendment, the Equal Protection components of the Due

Process Clause of the Fifth Amendment, and the Eighth Amendment, and noting

that since the Court has refused to recognize new claim since 1985, it is unlikely to

do so).

Accordingly, of all seventeen causes of action, only six–the fourth through

ninth, alleging Fourth Amendment violations–are recognized causes of action.

Although this Court is confident that alone is a sufficient reason to grant judgment

as matter of law for Defendants on those unrecognized claims, as discussed below,

they are also barred by the statute of limitations and qualified immunity.

A. **CLAIMS ARISING OUT OF THE MARCH 2005 SEARCH ARE BARRED BY THE STATUTE OF LIMITATIONS**

Although federal law determines when a *Bivens* claim accrues, the law of the

forum state determines the statute of limitations for such a claim, as well as

whether equitable tolling or equitable estoppel applies to toll the running of the

statute of limitations. *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008).

Kortlander argues to the contrary, but the applicable statute of limitations for a

*Bivens* actions is the forum state's statute of limitations for personal injury actions.

*Van Strum v. Lawn,* 940 F.2d 406, 410 (9th Cir. 1991). Montana law imposes a

three-year statute of limitations for general tort actions. Mont. Code Ann. § 27-2-

204(a).

Under federal law, a claim accrues when the plaintiff "knows or has reason

to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate*

*Corp.,* 923 F.2d 758, 760 (9th Cir. 1991). "[A]s long as a plaintiff has notice of the

wrongful conduct, it is not necessary that it have knowledge of all the details or all

of the persons involved in order for the cause of action to accrue." *Western Center*

*For Journalism v. Cederquist,* 235 F.3d 1153, 1157 (9th Cir. 2000). A *Bivens* claim arising out of a search accrues on the date of the search. *See Kreines v. United States*, 959 F.2d 834, 836 (9th Cir. 1992); *see also Johnson v. Johnson County Com'n Bd.* 925 F.2d 1299, 1300 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."). Accordingly, any claims relating to March 31, 2005 accrued on that date.

Kortlander nonetheless argues that claims relating to March 31, 2005 are not barred by the statute of limitations because of the "continuing violations doctrine" and because the statute of limitations should be tolled due to a legal disability.

As to the continuing violations doctrine, Kortlander alleges Defendants continually threatened him with indictment from the March 2005 search until he was told no charges would be filed in August 2009. Kortlander argues the statute of limitations should therefore be tolled until August 2009. In so arguing, Kortlander ignores Ninth Circuit precedent in favor of cases from the Fifth Circuit. The Ninth Circuit, however, has acknowledged that its continuing violation jurisprudence differs from other circuits. *Knox v. Davis*, 260 F.3d 1009, 1015 (9th Cir. 2001). In the Ninth Circuit, a "continuing violation is occasioned by continual

unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk,* 620 F.2d 1144, 1147 (9th Cir. 1981). Application of the continuing violation doctrine requires "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." *Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation*, 895 F.2d 588, 597 (1990).

Here, the Complaint contains the following allegations which could be relevant to Kortlander's continuing violations theory:

- In 2008, Defendants continued to threaten Kortlander's liberty and livelihood. But even after the federal case had been closed, September 11, 2007, United States Attorney Carl Rostad continued to negotiate with Kortlander. *Complaint, doc. 1,* ¶ 51. No charges were ever brought against Plaintiffs and in August 2009 the United States Attorney advised Plaintiff(s) that the investigation and prosecution had ended. *Complaint, doc. 1,* ¶ 56.

- Garryowen is situated in Indian Country inside the exterior boundaries of the Crow Indian Reservation in Big Horn County, Montana. While under federal investigation following the March 31, 2005 search warrant execution, Kortlander was the victim of crimes, some amounting to federal felonies, and he witnessed crimes, which were duly reported to federal law enforcement agencies including the Bureau of Indian Affairs, The Bureau of Land Management, the National Park Service, and the Federal Bureau of Investigation. In some instances, the identities of those known to have committed crimes against Plaintiffs were known to the Defendants and federal agents. However, there were no investigations or follow up by federal officials, leaving Kortlander and all the Plaintiffs without the benefit

of law enforcement on a federal Indian reservation. *Id.* at ¶ 59.

- On September 11, 2007, the case against Plaintiffs was closed by action of the Federal District Court in Billings, Montana. Defendants however, continued in their investigation of Plaintiffs. Neither Plaintiffs nor their attorney(s) were at any time advised by either the Defendant(s) or the United States Attorney that the case had been closed. *Id.* at ¶ 64.

- Over the course of time commencing as early as 2003, Defendants engaged in a continuing course of conduct to individually and collectively violate the Constitutionally protected rights of the Plaintiffs and each of them. The actions of Defendants resulted in the denial of Plaintiffs' rights as set forth herein above and as shall be proven in trial, to Plaintiff(s) damage, injury and financial loss. *Id.* at ¶ 86.

In addition, paragraphs 65-79 of the Complaint contain allegations relating to the September 2008 search. Kortlander alleges that the basis of this search was information obtained during the March 2005 search, which Kortlander alleges was unlawful for lack of probable cause and other deficiencies. *Id.* at ¶¶ 66-67.

In response, the Government stresses that the continuing violation theory requires "repeated instances or continuing acts of the same nature," *Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation*, 895 F.2d at 597, and that there are no such allegations here as Kortlander is relying on the continuing threat of prosecution in the aftermath of the March 2005 search.

In the Court's view, the threat of prosecution that existed after the March

2005 search is a continuing impact from that search–it is not a repeated instance or a continuing act of the same nature. The same is true of Kortlander's allegation that federal agents refused to investigate crimes committed against him. The September 2008 search, however, is a second act of the same nature, but it occurs more than three years after the March 2005 search. That is, the three year statute of limitations expired before the second allegedly repeated, unlawful act. Kortlander does not cite, and the Court is unaware of, any cases applying the continuing violations doctrine under such circumstances.

Plaintiffs also suggest the statute of limitations should be tolled until the expiration of the five year statute of limitations for federal criminal offenses because of the "disability" imposed by the potential criminal charges. In support, Plaintiffs cite § 27-2-401 of the Montana Code. But § 27-2-401 applies only to minors or persons committed due to mental disease and Plaintiffs provide no other authority that the statute of limitations for *Bivens* action should be tolled until the statute of limitations on underlying criminal conduct has expired.

Accordingly, any claims relating the March 2005 search must be dismissed as untimely.

**B.     DEFENDANTS HAVE QUALIFIED IMMUNITY BECAUSE PLAINTIFFS DO NOT ALLEGE PLAUSIBLE VIOLATIONS OF CONSTITUTIONAL RIGHTS**

The doctrine of qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *see also Mitchell v. Forsyth,* 472 U.S. 511, 517 (1985) (noting that the Supreme Court purged qualified immunity of its subjective components in *Harlow v. Fitzgerald,* 457 U.S. 800 (1992)). Further, since *Bivens* liability is premised on direct personal responsibility, there is no vicarious liability. *Pelegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996).

Qualified immunity balances the need to hold public officials accountable when they exercise their power irresponsibly with the need to shield public officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. It applies regardless of whether a public

17

official makes a mistake in law, a mistake in fact, or a mistake based on a mixed question of law and fact. *Id.* Since the driving force behind the doctrine is to ensure that insubstantial claims against public officials are resolved prior to discovery, qualified immunity is more than a mere defense to liability–it provides immunity from suit. *Id.* It should therefore be resolved in the earliest stages of litigation. *Id.* at 232.

Although prior Supreme Court precedent mandated that courts first consider whether there was a violation of a constitutional or statutory right before determining whether the right was clearly established, *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the Supreme Court in 2009 granted courts discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court does not reach the question of whether the rights were clearly established because the Complaint fails to allege a violation of any constitutional rights.

## 1. FIRST AMENDMENT CLAIM

The First Cause of Action alleges Defendants violated Plaintiffs' First Amendment rights by denying Kortlander's right to freedom of speech. In the only other paragraph of the Complaint which can be construed to relate to the

suppression of speech, Plaintiffs allege that:

> By initiating criminal charges against Kortlander where no crime had been committed, Defendants restricted Plaintiffs' freedom of speech. Kortlander was no longer able to interact freely with his friends, employees, business associates or customers because of the threat of being charged criminally with tampering with witnesses. This, with other acts of the Defendants served to economically damage Plaintiffs.

*Doc. 1, ¶ 63.*

As noted, there is no *Bivens* cause of action for deprivation of First Amendment rights. Moreover, aside from the fact that no criminal charges against Kortlander were ever initiated, to allege a First Amendment claim, Plaintiffs must allege that by their actions Defendants deterred or chilled the plaintiff's political speech and that such deterrence was a substantial or motivating factor in the defendant's conduct. *Medocino Envtl. Center v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir. 1999). Further, to the extent Plaintiffs claim injury to their reputation or their business on account of Defendants's conduct, such claims are not actionable as constitutional torts. *Siegert v. Gilley,* 500 U.S. 226, 233-34 (1991) *citing Paul v. Davis,* 424 U.S. 693, 708-09 (1976). Since there is no allegation that any of Plaintiffs political speech was deterred–or any allegation that Defendants intended to chill Plaintiffs political speech–the First Amendment claim must be dismissed because even if there was such a cause of action, Plaintiffs have

19

not alleged the violation of a clearly established constitutional right.

## 2.    SECOND AMENDMENT CLAIM

Plaintiffs' Second Cause of Action alleges Defendants violated Plaintiffs' Second Amendment Right to keep and bear arms. The Complaint alleges only that during the pendency of the investigation he lost the right to carry a concealed firearm, citing § 45-8-321 of the Montana Code. *Doc. 1, ¶ 58.* Although not contained in the Complaint, Plaintiffs assert in the response brief that Defendants violated Kortlander's Second Amendment rights (1) by seizing various firearms during the March 2005 search and holding them until 2010 and (2) by leading him to believe that he would be charged with a felony, which would preclude him from purchasing additional firearms. *Doc. 27, pp. 20-21.*

First, assuming there is a Second Amendment right to carry a concealed firearm that was clearly established at the time, no federal officer precluded Kortlander from carrying a concealed weapon. The statute cited by Kortlander in the Complaint provides only that when a county sheriff denies a concealed weapon permit to a person who is the subject of an active criminal investigation, he does not have to provide a written statement as to why the permit was denied. Mont. Code Ann. § 45-8-321(2). In fact, the statute does not expressly prohibit the

county sheriff from issuing a concealed weapons permit to a person subject to an active criminal investigation, so long as the sheriff does not have "reasonable cause to believe that the applicant is mentally ill, mentally defective, or mentally disabled or otherwise may be a threat to the peace and good order of the community." *Id.*

With respect to the newly alleged Second Amendment claims in Plaintiffs' response brief, Defendants were authorized to seize evidence of a crime when it is in plain view. *United States v. Stafford,* 416 F.3d 1068, 1076 (9th Cir. 2005). The plain view exception requires that the officer is lawfully searching the area where the evidence is found and the incriminatory nature of the evidence is readily apparent. *Id.* As discussed below, Defendants were lawfully searching the area because they had a valid warrant. Moreover, since marijuana was also seized in the search and it is illegal for an unlawful user of a controlled substance to possess firearms, 18 U.S.C. § 922(g)(3), Defendants were authorized to seize Kortlander's firearms.

Further, Kortlander was not deprived of his right to possess firearms because of the investigation. Although potential purchasers of firearms are required to disclose whether they have been convicted or are currently charged with a felony, they are not required to disclose whether they are the subject of a criminal

investigation. The Court is unaware of any federal law prohibiting persons who are being investigated, but who have not been charged or convicted with a felony or domestic violence offense, from possessing firearms.

Since Plaintiffs have not alleged the violation of any clearly established Second Amendment Rights, any such claims must be dismissed for failure state a plausible claim for relief.

### 3. THIRD AMENDMENT CLAIM

Perhaps the most frivolous allegation in this case is that Defendants violated Kortlander's Third Amendment rights by intruding into his personal residence. The Third Amendment prohibits the quartering of soldiers in houses during peacetime, and requires that it be done according to law during wartime. The Court is unaware of any authority holding that federal agents violate the Third Amendment when by executing search warrants on homes. Accordingly, the Third Cause of Action must also be dismissed.

### 4. FIFTH AND SIXTH AMENDMENT CLAIMS

Plaintiffs' Tenth Cause of Action alleges Defendants violated Kortlander's right to be free from self-incrimination by failing to give *Miranda* warnings during a custodial interrogation. But there is no violation of the Self-Incrimination Clause

until the accused words are used against him in a criminal case. *Chavez v. Martinez,* 538 U.S. 760, 767 (2003). Since charges were never filed against Kortlander, his Tenth Cause of Action does not state a plausible claim for relief.

Similarly, the Fifteenth Cause of Action alleges a violation of the Sixth Amendment right to counsel through Defendants' failure to advise Plaintiffs (presumably Kortlander) of the Fifth Amendment privilege against self-incrimination. Again, the Self-Incrimination Clause is not violated until an accused's statements are used against him in a criminal case. *Chavez,* 538 U.S. at 767. Further, the Sixth Amendment right to counsel does not attach until a person has been formally charged. *United States v. Mills,* 641 F.2d 785, 788 (9th Cir. 1981). The Fifteenth Cause of Action must also be dismissed as implausible.

Plaintiffs' Thirteenth Cause of Action alleges Defendants violated "Plaintiffs' (presumably Kortlander's) right to a speedy trial by delaying prosecution before declining the Indictment on the Plaintiffs for nearly five years ..." But the Sixth Amendment right to a speedy trial does not apply until a person becomes an "accused"–when they have been formally charged by indictment or information or when they are arrested or otherwise held to answer to a criminal charge. *Mills,* 641 F.2d at 788. Since Kortlander was never charged and never

arrested, Plaintiffs' Thirteenth Cause of Action must be dismissed as implausible.

The Fourteenth Cause of Action also purports to allege a Sixth Amendment violation, this time for violating Plaintiffs' right to confront or face their accusers. Although it is far from clear as to what accusers Plaintiffs are talking about, it has long been established that even a criminal defendant–which Kortlander is not–does not have a right to confront informants who do not testify against him. *Miller v. Sigler,* 353 F.2d 424, 427 (8th Cir. 1965). Further, the right to confrontation is a "*trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 62 (1987)(emphasis in original). The Fourteenth Cause of Action must also be dismissed as implausible.

### 5.  EIGHTH AMENDMENT CLAIM

The Sixteenth Cause of Action alleges Defendants violated Plaintiffs' Eighth Amendment rights "by imposing excessive costs upon Plaintiffs as a result of Defendant(s) their [sic] unlawful and unreasonable intrusion into Plaintiff(s) lives and business, amounting to an excessive fine imposed without a finding of criminal or civil liability." The Supreme Court has explained that as used in the Eighth Amendment, the word "fine" meant a "payment to a sovereign as punishment for

24

some offense" and that the Excessive Fines Clause applies only to limit the government's power to extract payments as punishment for offenses. *United States v. Bajakajian,* 524 U.S. 321, 327-28 (1998). Since Kortlander was never even charged with an offense, let alone required to pay a fine as punishment for being convicted of an offense, the Sixteenth Cause of Action must be dismissed as implausible.

### 6. FOURTEENTH AMENDMENT CLAIM

The Seventeenth Cause of Action alleges Defendants violated Plaintiffs' Fourteenth Amendment rights by "denying them equal protection under the laws of the State of Montana by Defendant(s)' violations of Plaintiffs' rights afforded under the Constitution of the United States and the State of Montana." But the plain language of the Fourteenth Amendment makes clear that it applies to state governments, not the federal government. *In re Young,* 141 F.3d 854, 858 (8th Cir. 1998) cert. denied, 525 U.S. 811 (1998). Since this is a *Bivens* actions against federal officials or their state agents, the Fourteenth Amendment is inapplicable.

Moreover, even if the Court construed the Seventeenth Cause of Action as an equal protection claim under the Fifth Amendment Due Process Clause, *see Simpson v. United States,* 342 F.2d 643, 643 n.1. (7th Cir. 1965), that claim would

also be dismissed because Plaintiffs have not alleged any discrimination, let alone

discrimination "so unjustifiable as to be violative of due process." *Bolling v.

Sharpe,* 347 U.S. 497, 499 (1954).

### 7. FIFTH AMENDMENT DUE PROCESS & TAKINGS CLAIMS

Plaintiffs' Eleventh Cause of Action alleges Defendants deprived Plaintiffs

of liberty and property without due process of law.  Similarly, the Twelfth Cause of

Action accuses Defendants of taking Plaintiffs' property without just

compensation.

With respect to the *Bivens* claim for the alleged unlawful taking of property

without just compensation, numerous courts have held there is no *Bivens* cause of

action for unlawful taking in violation of the Fifth Amendment because Congress

has expressly provided a cause of action for takings under the Tucker Act.  *E.g.,*

*Reunion, Inc. v. F.A.A.,* 719 F.Supp.2d 700, 710 (S.D.Miss. 2010), *citing*

*Anoushiravani v. Fishel*, 2004 WL 1630240, at 8-9 (D.Or. July 19, 2004).

Plaintiffs Twelfth Cause of Action is therefore dismissed.

As to the Fifth Amendment due process claim alleged in the Eleventh Cause

of Action, it must also be dismissed because the Government alleges the property it

still holds is contraband, and Plaintiffs cannot have a property right in that which it

cannot legally possess. *Cooper v. City of Greenwood,* 904 F.2d 302, 305 (5th Cir.1990). Further, Kortlander is currently seeking the return of these items through a Rule 41(g) motion in another case before this Court. That is the appropriate forum to resolve any issues relating to the property still held by the Government.

### 8. FOURTH AMENDMENT CLAIMS

In causes of action Four through Nine, Plaintiffs allege violations of the following Fourth Amendment rights:

· Fourth, Kortlander's right against unreasonable search of his residence;

· Fifth, Plaintiffs right to be free from unreasonable seizure;

· Sixth, Kortlander's right against an unreasonable search of his person;

· Seventh, Plaintiffs right against "unreasonable search and seizure by reason of the false allegation of Defendants' commission of a crime;"

· Eighth, Plaintiffs' right to be free from the use of excessive and unreasonable force; and

· Ninth, Plaintiffs' rights against searches without probable cause through the seizure of computers and business records "where no other evidence of a crime does exist."

First, the Complaint makes reference to the Garryowen Trading Company, a business allegedly owned by Putt and Jill Thompson, as well as other museum

employees who may have been searched or restrained during the execution of the search warrants. Since Kortlander has no standing to assert claims on behalf of anyone other than himself, Historical Rarities, Inc., and the Custer Battlefield Museum, Inc., *see Massey v. Helman*, 196 F.3d 727, 739-40 (7th Cir. 1999)(exceptional circumstances aside, litigants cannot assert the legal rights of others), any such claims must be dismissed as implausible.

Second, the Complaint's Fourth Amendment allegations primarily relate to the March 2005 search and the Court has already decided that any such claims are barred by the statute of limitations. In any event, since the Fourth Amendment claims arising out of the March 2005 search can be easily disposed of on their merits, the Court will briefly address them anyway.

Finally, with respect to the September 2008 search, the Complaint challenges only the validity of the warrant–it makes no allegations of excessive use of force or improper searches of Kortlander's person or his residence. In fact, the Complaint makes clear that "every item seized was on public display in the Custer Battlefield Museum" and "[n]o further search was conducted." *Doc. 1,* ¶ 77.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

> violated, and no Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly describing the place
> to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Since both searches were conducted pursuant to search warrants, the Court begins there.

A search or seizure pursuant to an invalid warrant constitutes a Fourth Amendment violation at the time of the search, even when only a portion of the search warrant is invalid. *Millender v. County of Los Angeles,* 620 F.3d 1016, 1024 (9th Cir. 2010). A search warrant can be invalid because it is not supported by probable cause or does not particularly described the place to be searched or the things to be seized. *Id.*

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotations omitted). When considering whether a warrant was issued upon probable cause, a "magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

Here, the March 2005 warrant and Special Agent Cornell's supporting affidavit were attached to the Complaint as Exhibits A-C. In his affidavit, Cornell avers as follows: (1) the BLM had been receiving complaints since 2003 that

Kortlander had been selling artifacts purportedly recovered from the Little Big Horn Battlefield on Ebay; (2) Kortlander represented the legitimacy of the artifacts by referring to a letter on BLM letterhead that was written in 1994 for a different purpose and referred to artifacts recovered on private land; (3) Kortlander has continued to use the BLM letter even though he has been told by the BLM that it disavowed the letter and he should not be using it; (4) BLM agents conducted an undercover operation in which they sold Kortlander marked artifacts of unknown origin, one of which that Kortlander later sold back to the agent on Ebay, representing that it was found in the 1990's with a metal detector on private land and using the 1994 BLM letter as evidence of the artifact's legitimacy. Based on these facts, the affidavit states there is probable cause to believe Kortlander has committed mail and wire fraud in violation of 18 U.S.C. § 1341 & 1343.[3] Cornell further avers that Kortlander conducts business in the Custer Battlefield Museum and Store and that he lives above the offices on the second floor.

Kortlander's primary misunderstanding is his argument that the 2005 search

---

[3]Mail fraud is codified at 18 U.S.C. § 1341 and wire fraud is codified at 18 U.S.C. § 1343. Although the first page of the March 2005 affidavit cites the proper sections, a later page cites sections 1341 and 1342. Title 18 U.S.C. § 1342 is inapplicable here and Kortlander argues the warrant is somehow invalid because it is referenced in the affidavit. Regardless, the affidavit plainly refers to mail and wire fraud and the warrant is not rendered invalid by what must have been a typographical error.

warrant alleges only lawful business activity. It is a federal crime to use the mail or wires to offer for sale something that it is not. The crimes of mail and wire fraud consist of four elements: (1) the defendant knowingly devised a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to deceive or cheat; and (4) the defendant used, or caused to be used, the mails or the wires to carry out or attempt to carry out an essential part of the scheme. Ninth Circuit Model Jury Instructions, §§ 8.122 & 8.124 (2010). Even without the deference afforded to the magistrate's determination of probable cause, the Court has no trouble concluding the 2005 search warrant and affidavit provided a fair probability that contraband or evidence of a crime will be found in a particular place.[4]

In the affidavit in support of the 2008 search warrant, Agent Cornell avers as follows: (1) the town of Garryowen, MT is owned by Kortlander and consists of a gift shop, museum, gas station, convenience store, business offices, a post office,

---

[4]The Court also notes that the Complaint makes clear that Kortlander signed three consent-to-search forms during the 2005 search. Consent being an exception to the warrant requirement, *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 533 (9th Cir. 2010), this is just another reason why Plaintiffs Fourth Amendment causes of action fail to state plausible claims.

and a personal residence for Kortlander; (2) agents searched Garryowen in March 2005 for evidence of mail and wire fraud relating to fake artifacts and discovered numerous artifacts containing eagle and migratory bird parts; (3) an investigation revealed that Kortlander received artifacts containing eagle and migratory bird parts for his museum and that Kortlander would acquire a fraudulent appraisal and prepare a fraudulent history for the artifacts; (4) an investigation also revealed that Kortlander has purchased eagle parts and feathers; (5) an investigation revealed that Kortlander was attempting to sell his businesses, including the artifacts containing eagle feathers and other migratory bird parts; (6) Agent Cornell visited the museum in the days before the application and observed artifacts containing eagle feathers; and (7) title 16 U.S.C. § 703(a) makes it unlawful to offer for sale or sell any migratory bird part.

Again, Kortlander mistakenly argues that no criminal activity is alleged because eagles are protected by the Bald and Golden Eagle Protection Act, not the Migratory Bird Treaty Act. But bald and golden eagles are protected by the Migratory Bird Treat Act. 50 C.F.R. § 10.13. Since the affidavit plainly avers that Kortlander possessed, bought, and attempted to sell artifacts containing eagle feathers, the September 2008 search warrant was supported by probable cause that

evidence of a crime would be recovered at Garryowen.

Kortlander nonetheless cites other law enforcement reports stating that no charges should be filed because there were no "clear cut" instances of Kortlander buying or selling eagle parts. But whether or not the United States Attorney deemed it a worthwhile expenditure of resources to prosecute the case has no bearing on whether the warrant application indicates a fair probability that contraband or evidence of a crime will be found in a particular place.

Kortlander also cites a report of an interview with Heritage Auction Galleries, a company Kortlander allegedly used to try to sell his businesses and the entirety of Garryowen, stating it was unknown whether Kortlander would include migratory bird feathers in the sale. Kortlander claims this statement conflicts with the Cornell statement in the affidavit that officials at Heritage understood that any sale of the museum would include artifacts containing eagle feathers. But even if Cornell deliberately or recklessly made false statements in the affidavit, the warrant is still valid if it provides probable cause without the allegedly false material. *Franks v. Delaware,* 438 U.S. 154, 171-72 (1978). Here, the allegedly false material appears in paragraph 5 of the 2008 search warrant affidavit. Considering the allegations in paragraphs 3, 4, and 6, there was probable cause to

believe evidence of a crime would be recovered during a search of the premises.

Kortlander also alleges the search warrants were invalid because the description of the place to be searched was not sufficiently particularized. A warrant sufficiently particularizes the place to be searched if "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

With respect to the 2008 search, the Complaint admits that the only area searched was the Custer Battlefield Museum and that the only items seized were taken from the display cases. The 2008 warrant plainly describes the Custer Battlefield Museum and Store as a two story structure with a green metal roof and brown wood paneling located at Interstate 90, Exit 514, approximately 62 miles south of Billings, Montana, containing a Conoco gas station, Subway sandwich shop, convenience store and U.S. Post Office, with a large stone monument out front with bronze busts of Col. Custer and Chief Sitting Bull. Three pictures of the building were attached to the warrant.

The 2005 search warrant contains the same pictures and description as the 2008 warrant, but also provides that "[s]everal smaller buildings, including what appears to be a house, are located behind the store."

The Court does not see how the description of the place to be seized could have been any more particularized. Moreover, considering that Garryowen is a cluster of buildings situated in on a wide-open prairie, there is virtually no possibility that the officers would mistakenly search another business or residence. *United States v. v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009). Accordingly, any claim that either warrant violates the Fourth Amendment because it did not particularly describe the place to be searched must be dismissed as implausible.

Finally, any claim that the warrants did not sufficiently particularize the items to be seized is also implausible. The 2005 search warrant contains an exhaustive list of evidence associated with mail and wire fraud violations. Except for the allegation regarding the unlawful seizure of computers and business records without probable cause of a crime alleged in the Ninth Cause of Action, Kortlander does not allege any specific items that were seized without beings properly identified in the search warrants. With respect to those computers and business records, the 2005 search warrant explicitly identifies them as things likely to contain evidence of mail and wire fraud. There is no indication that computers and business records were seized during the 2008 search. As discussed above, firearms were seized in 2005, but they were in plain view. Since marijuana was also found

and it is a federal crime for an unlawful user of marijuana to possess firearms, Defendants were authorized to seize them.

Having concluded that the warrants were supported by probable cause and particularly described the places to be searched and the things to be seized, Plaintiffs Fourth, Fifth, Seventh, and Ninth Causes of Action must be dismissed for failure to allege the deprivation of a constitutional right.

The Sixth Cause of Action alleges Defendant's unlawfully searched Kortlander's person. In paragraph 52 of the Complaint, it is alleged that when Kortlander arrived in Garryowen during the March 2005 search, he was detained and searched, as was his car. Regardless, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). As to the search of Kortlander's person and his car, the Court is less certain about the constitutionality of these searches, but even if Kortlander's rights were violated, these claims are barred by the three-year statute of limitations. The Sixth Cause of Action must be dismissed.

Finally, the Eighth Cause of Action alleges Defendants used excessive and unreasonable force. The only allegations of excessive force in the entire

Complaint are contained in paragraphs 52-54 and 60, all relating to the March 2005 search. Paragraphs 53 and 60 allege the use of force against a museum volunteer and "witnesses." As noted, Kortlander cannot assert the rights of third parties. Paragraphs 52 and 52 allege only that Kortlander was threatened by the brandished weapons of unspecified agents. Assuming that such action constitutes excessive use of force, this cause of action must be dismissed because the statute of limitations has passed.

### 9. DISMISSAL IS WITH PREJUDICE

Having concluded that every cause of action must be dismissed because it is barred by the statute of limitations or is implausible, the Court considers whether Plaintiffs should be granted leave to amend. Although there are other factors to consider, such as bad faith, prejudice to the opposing party, undue delay, and whether the pleading has previously been amended, futility alone can justify the denial of leave to amend. *Nunes v. Ashcroft,* 375 F.3d 805, 808 (9th Cir. 2004); *see also Caravantes v. California Reconveyance Co.*, 2011 WL 3359707, * 5 (slip op., S.D.Cal. 2011) (citing futility of amendment as a reason to dismiss with prejudice).

Here, many of the claims, such as those for violation of the Second, Third,

Fifth, Sixth, Eighth and Fourteenth Amendments, can only be described as frivolous and treading dangerously close to violating Rule 11(b) Fed.R.Civ.P. Further, no amendment could change the fact that claims arising out of the 2005 search, which are the vast majority of claims, are barred by the statute of limitations. Although the causes of action alleging violations of the First Amendment and the Due Process and Takings Clauses of the Fifth Amendment are less frivolous, there are no such recognized causes of action.

As to the Fourth Amendment claims arising out of the September 2008 search, Plaintiffs have moved to amend the complaint to allege additional facts recently discovered through Freedom of Information Act requests. *Doc. 31.* In the proposed amended complaint (*doc. 31-1*), Plaintiffs add 18 paragraphs to the section of the Complaint relating to the September 2008 search warrant. But even if these allegations were included in the Complaint, the September 2008 search warrant still has a rock-solid foundation in probable cause. Amendment would therefore be futile. Any Fourth Amendment claims relating to the September 2008 search must therefore be dismissed with prejudice.

Paragraphs 73a-73c contain allegations that Court construes these additional allegations as attacking the foundation for probable cause contained in paragraphs

4 and 5 of Cornell's affidavit in support of the 2008 search warrant. Specifically, paragraphs 73a-73c attempt to show that Cornell falsely averred that Kortlander offered to sell artifacts containing eagle parts to or through John Hellson or Allen Wolfleg. As noted above, probable cause does not require certainty, but a fair probability that evidence of a crime will be found in a particular place, *Millender*, 620 F.3d at 1024. Moreover, this Court must pay great deference to the magistrate's finding of probable cause for a search warrant. *Gates*, 462 U.S. at 236. Most importantly, even if Cornell deliberately or recklessly made false statements in the affidavit, the warrant is still valid if it provides probable cause without the allegedly false material. *Franks,* 438 U.S. at 171-72. Accordingly, even if the Court assumes Cornell deliberately or recklessly averred that Kortlander tried to sell eagle artifacts through or to John Hellson or Allen Wolfleg, paragraph 3 still provides probable case that Kortlander purchased eagle parts and feathers from James Brubaker and that Kortlander, through the Museum, accepted artifacts containing migratory bird parts in exchange for fraudulent tax write offs.

Similarly, paragraph 73d and paragraphs 73h-73r attempt to undermine Cornell's averment, contained in paragraph 5 of his affidavit in support of the 2008 search warrant, that Kortlander contracted with Heritage Auctions to sell his

collection of artifacts along with the town of Garryowen. Again, even if the Court assumes Cornell made false allegations and disregards the entirety of paragraph 5, paragraph 3 contains sufficient allegations of criminal activity for the magistrate to believe there was a fair probability that evidence of a crime would be found at Garryowen.

Finally, paragraphs 73e-73g cite internal investigative reports from the FWS stating that Kortlander should not be charged with Migratory Bird Treat Act violations because there were no "clear cut" violations. As discussed above, whether or not charges are ultimately brought has nothing to do with whether there is probable cause to issue a search warrant.

Since paragraphs 73a-73r of the proposed amended complaint change nothing, the motion for leave to amend must be denied and this case dismissed with prejudice.

**IV.** **ORDER**

For those reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings (*doc. 18*) is **GRANTED:** the Complaint (*doc. 1*) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File Second

Amended Complaint (*doc. 31*) is **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated this 12th Day of September, 2011.

_/s/ Richard F. Cebull_____
Richard F. Cebull
United States District Judge